[Civ. No. 28233.   Second Dist., Div. Three.   Feb. 4, 1966.]

ANNA BELL McDONALD, Plaintiff and Appellant, v. JOHN ROBERT SCHWARTZ, Defendant and Respondent.

Roberta Ralph for Plaintiff and Appellant.

Howard W. Shelton for Defendant and Respondent.

KAUS, J.—Plaintiff appeals from a judgment entered on a jury verdict awarding her damages in the sum of $30. She claims that the award is inadequate as a matter of law.

The litigation was the result of an accident which occurred on April 23, 1962, when plaintiff's car did not pull away from an intersection as fast as defendant, who had stopped behind her, thought it would. There was a collision, either negligible in impact or sufficient to propel plaintiff's car one car length into the intersection, depending on whom one believes. There is no doubt that on May 4, 1962, only 11 days after the accident, plaintiff went through low back surgery, which revealed two herniated intervertebral discs. A laminectomy and fusion were performed. Plaintiff's claimed special

damages for this operation, other medical expenses and loss of earnings are almost $3,500. The reasonableness of the charges as such is not disputed. There was slight damage to plaintiff's automobile, variously estimated at $33.74 and $12.98.

In October of 1960 plaintiff was the victim of an industrial accident when she was employed by Ryan Aeronautics. The mechanics of that accident are that plaintiff fell on some steps. Plaintiff did not return to work between October 1960 and the day of the automobile accident about 16 months later, but, of course, was planning to go back to work at the time of the later accident. She saw a variety of doctors after the industrial accident, some for treatment, some apparently at the request of her employer and at least one, Doctor Faeth, in his capacity as an independent medical examiner appointed by the Industrial Accident Commission.

Plaintiff's workman's compensation claim against Ryan was settled for $12,308.68 just before the automobile accident, on condition that she pay her own medical bills. She testified that this settlement was negotiated by her attorneys, that she did not approve of it but was forced to go along. She even called a referee of the Industrial Accident Commission on April 4, 1962, and told him that she was dissatisfied with the settlement.

It is evident that plaintiff did not persuade the jury by a preponderance of the evidence that any but a minute portion of her problems which led to surgery were the result of the automobile accident.

Neither plaintiff nor the doctor who performed the surgery —and who had never seen her before the accident—made very attractive witnesses. The first practitioner plaintiff went to see after the automobile accident was a chiropractor who only massaged her neck. She did not return to him as requested and went to another doctor who did nothing for her but refer her to the surgeon. Direct examination of plaintiff concerning the industrial accident was perfunctory. She claimed that only one of the doctors who had examined her— Doctor Faeth—had recommended surgery. She had decided not to undergo any, because the pain "had begun to kind of go away." The examination set forth in the footnote gives the gist of her testimony.[1]

---

[1] "Q. Just before the automobile accident, were you experiencing any pain as a result of this industrial accident? A. No. Q. Had the

Cross-examination revealed a somewhat different picture. She had been hospitalized in October of 1960 when she was treated by a Doctor Horstman. Her family doctor then put her in another hospital for certain tests. This too was probably still in 1960. She was quite vague on the date of the last treatment to her back this doctor had administered. In December of 1960 she saw a Doctor Heifetz to whom she complained of a constant low back pain, accentuated with sitting, prolonged standing, coughing, sneezing, bending and lifting. She also was suffering from pain in her right leg and constant tingling in the calf and thigh. She also saw a Doctor Le Moncheck in January of 1961. At that time she was wearing a corset support prescribed by Doctor Horstman and suffering from constant pain in the lower back, numbness in her little toe and outer aspect of the calf and foot. She described similar complaints to a Doctor Black in December of 1960 and to a Doctor Rocovich in February of 1961. She saw Doctor Faeth first in April 1961, by which time she was using pelvic traction at home. This continued at least until November of 1961 when she saw Doctor Rocovich again. She was still suffering from the pain in her back and down the right leg at that time. At one point she even slept in traction. In January of 1962 she saw Doctor Faeth again and complained of the same symptoms to him. Although she claimed at the trial that her condition was getting better, she could not recall whether or not she told Doctor Faeth that it was entirely the same as at the time of his first examination. In February of 1962 she saw a Doctor Crockett. Just before she saw him her leg went completely numb for three or four seconds, "enough to make you think you would never move it again." She then also suffered from a stinging sensation down her right leg which occurred daily and was associated with a numbness in the same area. She could not say whether she made the exact statement that she "had constant low back pain." She maintained however that the last three or four months before the automobile accident she was improving rapidly.

The surgeon who performed the operation may have struck the jurors as cocounsel on plaintiff's side. There is no need for a detailed résumé of his evidence; a few samples will suffice: although he testified positively that on the basis of

symptoms or the pain or whatever it was gone away by the time of April 23 before your accident? A. Yes.

his findings and the patient's history the automobile accident caused a severe aggravation of her prior condition, he had to admit that he did not consult any medical reports concerning that condition but relied entirely on the history she gave him; he was reluctant to admit that the degeneration of the intervertebral discs that he removed antedated the automobile accident.[2] He hemmed and hawed about the significance of recurrent episodes of the total loss of use of the right leg[3] and argued with counsel.

Compared to plaintiff and her surgeon, Doctor Faeth may well have appeared to the jury like a breath of fresh air. He first examined plaintiff in April of 1961. Her complaints then were a constant aching discomfort in the lower lumbar region with occasional sharp exacerbations, pain in the right leg distributed to the back of the thigh, the calf and the outside of the foot, and across the foot to the ankle and the buttocks, a pain which he related to the sciatic nerve. This pain was present several hours daily. She also complained of numbness on the outside aspect of her right thigh with occasional tingling of her right calf. He examined her and performed various tests. His diagnosis was a compression of the nerve roots of the sciatic nerve in her low back. An examination of various reports he had reviewed indicated to him that she was getting worse at the time he first saw her. Her family physician had diagnosed a possible herniated disc as early as February 1961. Doctor Faeth had an electromyogram performed. It was positive and showed damage to the right first

---

[2] "Q. The degeneration certainly occurred before April 23, didn't it, Doctor? A. Before the accident? Well there is no way of telling. It is a matter of degree. It is a progressive thing. It may have been going on for a year and it may have continued to go on since April 23 or have been accelerated. There is just no way to tell, but it is— Q. But at any rate the degeneration took place over a long period of time, didn't it, certainly more than the eleven days? A. The total degenerative process, I would say yes, went on more than eleven days.''

[3] "Q. This is in February of '62. A. Yes. Q. About two months before you saw her. That she complained of the following: Recently there have been recurrent episodes of total loss of use of the right lower extremity. Now, would that be significant in diagnosing this lady's condition? A. Well, in several respects. It would depend on who wrote it and what they meant by it. You can have an ordinary sciatic pain that's so severe you can't use your leg or you can have a pain with so much weakness that your leg will buckle, and whether a resident physician in a hospital or an intern or whatever practitioner— Q. Well, assume some of these complaints were made to a reputable neurosurgeon. A. Yes. Q. I am talking about the complaints that she made, Doctor. You didn't have the benefit that in February of 1962 she made this complaint? A. No, but even if she had told me that I would want to know more about it than just that, loss of use.''

sacral nerve. On the other hand his neurological examination showed a functional type of sensory loss which, in his opinion, was feigned. The doctor recommended at the time that she have surgical excision of the disc at L5-S1. He found her to be totally disabled.

Doctor Faeth saw her again on January 8, 1962. Her complaints at the time were essentially the same as they had been nine months earlier. This was confirmed by his examination. His recommendation for surgery remained the same. Examining the operative report of plaintiff's surgeon it was Doctor Faeth's opinion that certain adhesions described therein would have taken a minimum period of six weeks to form.

On cross-examination Doctor Faeth declared himself unable to state that the accident of April 23, 1962, did not aggravate plaintiff's prior condition.

It is this last answer by Doctor Faeth which plaintiff finds most significant on this appeal, but we do not. The ultimate trier of fact was the jury. The inability of defendant's expert witness to answer what may appear to be the key question in the litigation one way or another, does not mean that the jury who heard all of the evidence and evaluated the credibility of all of the witnesses could not find against the party carrying the burden of proof. The evidence showed a very minor accident, a plaintiff whom the jury was justified in believing to be untruthful and a strongly biased expert on her side. On appeal plaintiff does not point to a single symptom not entirely subjective in nature—such as headaches—which cannot be said to have preexisted the automobile accident if all conflicts are resolved in favor of the verdict.

Plaintiff devotes a portion of her brief to an analysis of the significance of the sum of $30 which the jury did award. In support of the verdict we must assume that the jury accepted the estimate of defendant's expert, $12.98, and awarded plaintiff a bagatelle for the slight jar caused by the accident.[4]

Although it is probably immaterial in view of what has been said whether in the court below plaintiff had the burden of proving an aggravation of a preexisting condition or defendant had the burden—as plaintiff contends here—that the operation and other medical attention given to her were not caused by the automobile accident, we deem it desirable to discuss the problem because plaintiff's counsel has been

[4]The car was never repaired.

understandably misled by a statement in one reported decision.[5]

The case in question is *Hagy* v. *Allied Chemical & Dye Corp.*, 122 Cal.App.2d 361 [265 P.2d 86]. There a plaintiff who was suffering from a dormant cancer of the larynx of which she was unaware breathed a ''penetrating and irritating 'smog' '' emitted by defendants' plant. She then lost her voice, consulted doctors, the cancer of the larynx was diagnosed and a laryngectomy was performed. Her theory in the trial court which was accepted by the jury was that the smog ''lighted up'' the dormant cancer which might have remained dormant and that therefore no operation would have been performed but for the smog episode. On appeal defendants claimed a lack of causal connection between the smog and the injury as a matter of law. The appellate court first said: ''We agree with appellants that the burden rested on respondents to prove that the sulphurous fumes generated by appellants' plant aggravated the preexisting cancer, but we are satisfied that whether or not this burden was sustained was for the jury alone to say, and that its finding in plaintiffs' favor was sustained by ample evidence.'' (*Id.*, p. 368.)

This statement is, of course, entirely correct and embodies what we believe to be the rule of law applicable to the case at bench. (See also *Deckard* v. *Sorenson*, 177 Cal.App.2d 305, 308 [2 Cal.Rptr. 121].) Two pages later, however, the court makes the following rather startling statement: ''The burden did not rest upon respondents to prove that the removal of respondent's larynx would not have been necessary but for her exposure to the smog; the burden was rather upon appellants to convince the jury that the operation would have been ultimately necessary in any event, even though the cancerous larynx had not been traumatized by the irritation of smog.''

At first blush this seems to negate what has been said before. On analysis however, we do not think so. The court appears to be answering an argument of defendant that if the plaintiff would have undergone the laryngectomy in any event, then defendants' negligence could not be the legal cause thereof, since it cannot be said that ''but for'' such negligence, there would have been no operation. Apparently conceding defendants' legal premise, which we think is erroneous, the court then made the quoted remark, which

---

[5]No complaint is made that the court erroneously instructed as to the burden of proof.

amounts to the announcement of a rule to the effect that if a defendant wants to overcome a showing of causation by the plaintiff by proving that even without defendants' negligence plaintiff would have suffered precisely the same harm, he has the burden of persuasion on the point.[6] The trouble with all of that is that the court should never have accepted defendants' premise. The fact that "but for" defendant's negligence the plaintiff still would have suffered the same harm simply is not a defense if the defendant's negligence and another cause each are a substantial factor in bringing about the harm. The whole problem was pithily discussed, explained and solved by Justice Bray in *Thomsen* v. *Rexall Drug & Chemical Co.*, 235 Cal.App.2d 775, 783 [45 Cal. Rptr. 642].

No useful purpose would be served in trying to distinguish other cases cited by plaintiff in which a verdict has been held to be inadequate as a matter of law. They are all factually quite different.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

---

[6]The compilers of California Jurisprudence, Second Edition, have interpreted the *Hagy* case as standing for the proposition that a "defendant has the burden of proving any affirmative defense such as . . . existence of a superseding cause." (35 Cal.Jur.2d, Negligence, § 209, fn. 8.)